**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JIGAR BABARIA; MIRAL PATEL; SRINIVAS MUKUNDA; NAGANANDINI CHITTA; S.M., a minor, by and through their guardian Srinivas Mukund; RAVI CHERUKU; SWAPNA KONDA; S.C., a minor, by and through their guardian Ravi Cheruk; S.C., a minor, by and through their guardian Ravi Cheruk; MARTIAL ANTONY JOSEPH LOURDES CAEN MARTIAL; SWAPNASREE BANGALORE ARUMUGAM; R.M.A.J., a minor, by and through their guardian Martial Antony Joseph Lourdes Caen Martia; SHEETAL MUNJEWAR; RUPALI MUNJEWAR; R.M., a minor, by and through their guardian Sheetal Munjewa; BHUVARAHAN SRINIVASAN; VAISHNAVI KOTHANDARAMAN; H.B., a minor, by and through their guardian Bhuvarahan Srinivasa; SANJAY BHAVE; ANANYA BHAVE; B.B., a minor, by and through their guardian Sanjay Bhav; VENKAT VELAGALA; CHAITANYA | No. 22-16700<br><br>D.C. No. 3:22-cv-05521-SI<br><br><br>OPINION |

VELAGALA; A.V., a minor, by and through their guardian Venkat Velagal; MOHIT SAXENA; GARIMA SAXENA; A.S., a minor, by and through their guardian Mohit Saxen; YOGESHKUMAR PATEL; RUCHI PATEL; SAHIL SHAH; SHALINI NEGI; VINOD MACHCHARLA; SRIJA PANNALA; NEHUL PATEL; CHARMI PATEL; KRISHNA SUNIL YEKASI; LAKSHMI KRISHNA NEELIMA ATLA; BHARGAVA DEEPAK KONIDENA; SRINIVAS SRIRAM KATURI; PONNADA SOUJANYA; SRIKAR PACHVA; PRAVEENA KANDIMALLA; SUJAY SHYAMSUNDAR KULKARNI; RENUKA CHANDRAKANT CHILAJWAR; RISHI VERMA; SHILPA VERMA; JAIMIN DAVE; DISHA DAVE; BANDAN DAS; VIDYA DADDALADKA; HARIKANTH BANDA; ANITHA CHEEKOTI; GAURAV NARULA; NIDHI NARULA; ANUSHIYA KANDASAMY; MANIVANNAN CHELLAPPA; NITHIN SOMA; VIJAY ARAVIND RAJAGOPALAN; SHARMILA GOPALAKRISHNAN; HARISH MURTHY; KAVYA RAMESH RAJAN; KEERTHI VARMAN ANNA JAYAPRAKASH;

MONISHA SOLAI ASHOK;
RANJANI PAI; GNANASEKARAN
GOVINDAREDDYPALAYAM
THIRUMAL; JAYASHREE
RAMAMOORTHY; NAGA
CHANDANA KORITALA;
KAUSHIK SIRVOLE; SHAKTHI
ARTHANARI; MADHUSUDHAN
KOODIGE; MITHUN MATE;
HARSHA SONDAWALE;
SUDHEER KUMAR ESSA;
ANNAPURNA JALAMADUGU;
SRINIVASA KOPPULA; SUJATHA
BATTINENI; SUDHEESH PILLAI;
MEENA VIJAYAKUMAR;
VALLISH GURU
VAIDYESHWARA; PALLAVI
HIRANNAIAH KALALE; FNU
SREEDHAR NATARAJAN;
PRASANNA RAMACHANDRAN;
SUBHRAMANYA KRISHNA
CHAITANYA PANUGANTI
VENKATA; VENKATA ANUSHA
GUNUGANTI; ONKAR
WALAVALKAR; PURVA JOSHI;
SARATBABU GINJUPALLI;
NARMADA KARTHIKA
CHITTURI; NAY THAKER;
MEGHA PABBY; SHANKAR
DHEERAJ KONIDENA; NAGA
RUKMINI SRIHARIKA DURGA,

*Plaintiffs-Appellants*,

v.

ANTONY J. BLINKEN, Secretary,
United States Department of State; UR
M. JADDOU, Director, United States
Citizenship and Immigration Services,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

VIKAS SINGH; VANDANA SINGH,                No. 22-35702

*Plaintiffs-Appellants*,                D.C. No. 2:22-cv-
                                           01180-RAJ
v.

UR M. JADDOU, Director, United
States Citizenship and Immigration
Services,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

SIDHARTHA DATTA; MILLY                No. 22-35773

SHARMA; A.D., a minor, by and through their guardian Sidhartha Datta; NAGI JONNALA; SWARNA GUNTAKA; V.S.J., a minor, by and through their guardian Nagi Jonnala; S.J., a minor, by and through their guardian Nagi Jonnala; SRINIVASULU MADARAPU; ANURADHA MADARAPU; V.A.C.M., a minor, by and through their guardian Srinivasulu Madarapu; SATHYA PRAKASH VEERICHETTY; POORANI DHARMASIVAM; S.S.P., a minor, by and through their guardian Sathya Prakash Veerichetty; BIKRAM KUMAR SAHOO; NAMITA MISHRA; S.S., a minor, by and through their guardian Bikram Kumar Sahoo; S.S., a minor, by and through their guardian Bikram Kumar Sahoo; SHAILESH NIRGUDKAR; DURGA NIRGUDKAR; S.N., a minor, by and through their guardian Shailesh Nirgudkar; VENKATA SUDHAKAR RAO MADDISETTY; SUJEEVANA PULAGAM; S.M., a minor, by and through their guardian Venkata Sudhakar Rao Maddisetty; SANDILYA DAMODARA; JYOSTNA DAMODARA; S.D., a minor, by and through their guardian Sandilya Damodara; ASHOK JEKKA

D.C. No. 2:22-cv-01302-JHC

JOTHIKRISHNAN; SHALINI
MUSUVATHY
BALASUBRAMANIAN;
SACHINTHA JOTHIKRISHNAN
ASHOK; HARISH THERANIKAL;
MADHULIKA THERANIKAL; R.T.,
a minor, by and through their guardian
Harish Theranikal; ABDUL SAMEER
SHAIK; RESHMIN CONTRACTOR;
R.S.A., a minor, by and through their
guardian Abdul Sameer Shaik;
VISWANADHA REGADAMILLI;
SRIDEVI REGADAMILLI; R.S., a
minor, by and through their guardian
Viswanadha Regadamilli;
RAMANAN RENGARAJ;
SIVASANKARI RAMANAN; R.R., a
minor, by and through their guardian
Ramanan Rengaraj; VIDYADHAR
JANGALE; MANISHA JANGALE;
RISHIKESH JANGALE;
RANADHEER R. VANGATE;
PRUDHVI REDDY BADDAM;
ABILASHA RANGARAJAN;
VENKATRAMAN RAJAGOPAL;
P.V., a minor, by and through their
guardian Abilasha Rangarajan;
MUKUL SATHE; APARNA SATHE;
P.S., a minor, by and through their
guardian Mukul Sathe;
SARAVANAN SANMUGAVEL;
MUTHULAKSHMI
RAMACHANDRAN; P.S., a minor,

by and through their guardian Saravanan Sanmugavel; DEVA SURESH DACHURI; MEENA DACHURI; P.M.Y.D., a minor, by and through their guardian Deva Suresh Dachuri; NUTAN KUNALA; MEENA CHITTURI; P.M.K., a minor, by and through their guardian Nutan Kunala; MANIVANNAN VENKATARAMANUJAM; CHITRA SEENIVASAN; P.M., a minor, by and through their guardian Manivannan Venkataramanujam; SENTHIL VEL GUNASEKARAN; N.S., a minor, by and through their guardian Senthil Vel Gunasekaran; SANDEEP DESHPANDE; DEVYANI DESHPANDE; M.S.D., a minor, by and through their guardian Sandeep Deshpande; KODAMANA SHIMJITH DIVAKAR; RENJIMA DIVAKAR; MALAVIKA DIVAKAR; M.D., a minor, by and through their guardian Kodamana Shimjith Divakar; KRISHNA RAO RAPARLA; DEVI RAPARLA; L.S.R., a minor, by and through their guardian Krishna Rao Raparla; R.R., a minor, by and through their guardian Krishna Rao Raparla; VIJAYABHASKARA KUNAM; SUMALATHA SIDDAREDDY; L.K., a minor, by and through their guardian

Vijayabhaskara Kunam; WASEEM SHERIFF HUMAYOON SHERIFF; HAMEEDA FOIZ WASEEM SHERIFF; L.E.W.S., a minor, by and through their guardian Waseem Sheriff Humayoon Sheriff; NARAYANA LATCHI; KUSUMA LATCHI; LAKSHMI LATCHI; S.L., a minor, by and through their guardian Narayana Latchi; FNU MADHU SUDAN; HIMANI KAPOOR; K.K., a minor, by and through their guardian Fnu Madhu Sudan; JAYAPRAKASH RADHAKRISHNAN; THIRUPURASUNDARI JAYAPRAKASH; K.J., a minor, by and through their guardian Jayaprakash Radhakrishnan; ANUJ JAISWAL; MADHULIKA JAIN; K.J., a minor, by and through their guardian Anuj Jaiswal; GAUTAM GUPTA; K.G., a minor, by and through their guardian Gautam Gupta; NAGENDRA GONDHI; YASHIKA KETIPALLI; K.G., a minor, by and through their guardian Nagendra Gondhi; BABUL GANESINA; NAGA GANESINA; J.G., a minor, by and through their guardian Babul Ganesina; D.G., a minor, by and through their guardian Babul Ganesina; PRANAV SINGH; HARPREET KAUR; I.K., a minor, by

and through their guardian Pranav Singh; VISHAL AYAPILLA; VENKATA SANTOSH RUPA KUMARI AYAPILLA; H.A., a minor, by and through their guardian Vishal Ayapilla; UMAKANT PATEL; RAMYATA PATEL; D.U.P., a minor, by and through their guardian Umakant Patel; TAPAN K DAS; NEERJA SAHU; D.D., a minor, by and through their guardian Tapan K Das; S.K.D., a minor, by and through their guardian Tapan K Das; SUSHIL KUMAR; SHIVANI SHARMA; AYUSHI SHARMA; PAVAN DEVULAPALLY; SWAPNA MADHURI NAMAVARAPU; A.S.D., a minor, by and through their guardian Pavan Devulapally; ANURAG SHARMA; NIDHI SHARMA; AYUSHI SHARMA; JEETENDRA RODDAM; VASAVI RODDAM; A.R., a minor, by and through their guardian Jeetendra Roddam; N.R., a minor, by and through their guardian Jeetendra Roddam; JAYANT NAMJOSHI; SARITA NAMJOSHI; A.J.N., a minor, by and through their guardian Jayant Namjoshi; LAKSHMI ISUKAPALLY; SAYEERAM GUNDU; ABHIRAAM GUNDU; A.G., a minor, by and through their

guardian Lakshmi Isukapally; LAXMI KONDAPALLI; PRAVEEN DEVARAPALLY; ABHINAV DEVARAPALLY; ANOOP GOPALAKRISHNAN; DEVI PARVATI CHITRA; A.A.M., a minor, by and through their guardian Anoop Gopalakrishnan; VENKATA NATTI; ASWINI KETTE; CHANDRA KOTA; RAMYAH RAMMOHAN SYAMALA; RAJENDRA DANDA; LAKSHMI RAMYA SILPA ALAPATI; NEETHU ELIZABETH SIMON; BOBEN PHILIP; VENKATA VISHNU CHAKRADHARA RAO JYOTHULA; KIRANMAI MADDURI; SHASHIKANT TIWARI; RITA TIWARI; CHANDRASHEKHAR BHARATIPUDI; PREETHI NAGARAJU; NARAYANA MURTHY CHUNDURI; LAKSHMI SOWJANYA MUNDLURI; KARTIK DESAI; DARSHANA DESAI; AMEY PARMARTHI; POORNA DHAMANKAR; UMANG BHARDWAJ; EESHA ACHARYA; SNEHAL M PATEL; KIRTI VEGAD; RAGHAVENDAR AMBALA; KRISHNA REGANI; ANOOP BALAKRISHNAN RADHAMMA; REMYA NEKKUTH MELATH;

RENJITH CHANDRAN PILLAI; SREEPARVATHY JAYALEKSHMI; BALAJI CHIDAMBARAM; SANGEETHA PARTHIBAN; RAJESH UPADHYAY; PRERNA SINGH; THENNARASU ESWARAN; GOWRIDEVI NATARAJAN; SRINIVAS JAKKULA; NAYEENTARA ATMAKUR; YETHENDRA PAIDA; RAMYA SETTIGIRI; AKSHIL SHAH; KARISHMA SHAH; BHAGYA SHREE SHEKHAWAT; SANDEEP SHEKHAWAT; CHETHAN RAO; DEEPTI BETTAMPADI; ARVIND RANGARAJAN; AISWARYA ARVIND; KIRAN AVVARU; CHANDANA METIKALA; HIMANI AJAY MANGLANI; AJAY MANGLANI; SRIKIRAN NELLI; VENKATA PARAMSETTY; MAYANKKUMAR PATEL; MITVIBEN GARACHH; KANCHAN ANANDMADHAV DAMLE; HARDIK SHANKARLAL MODI; PUSHPAK ARVIND KULKARNI; PRAJAKTA SUDHIR GOKHALE; VAMSHI BASIKA; MILKA BASIKA; ARPIT AGARWAL; SHWETA AMARJEET SINGH; VIJAY MOHAN RAGI; BHUVANA DEVI GANESAN; AKHIL KAMMA;

APOORVA BUGGAVEETI; MOHIT KUMAR MAHAJAN; SHRADHA MAHAJAN; RISHI MASHELKAR; PAYAL TADE; NANDA KISHORE REDDY VEERAPU REDDY; UMA MAHESWARI NAGELLA; RAZIUDDIN MOHAMMED; SABINA KHAN; CHAITHANYA BOTTA KRISHNA; KEERTHI SREE KANTAM; CHANDRASEKHAR GADDIPATI; TEJASWI MUMMANENI; HARSHAVARDHAN SHIVARAM GANGOLLI BHAT; NIYATA HARSHAVARDHAN BHAT; KANNAPIRAN KALEESWARAN SAMPATH; SINDHUJA SELVAN; BHAGYA NAGA RAJA MUKKAMALA; REVATHI DEVI MUKKAMALA; BHARATH RAMKUMAR; VASANTHI NARAYANAN; SHAKEER AHMED MOHAMMAD; SADIYA SULTANA; NAGARJUNA PARUPALLI; NARMADHA RAJKUMAR; SRAJAN KUMAR MALLINENI; SINDHU KONERU; SAI KIRAN TOGITA; SAI KRUSHI VALLAKONDA; SUBRAHMANYA VEDANTHAM; SUPRAJA NAGAMANGALAM; KHWAJA MOHINUDDIN KHAN; NO NAME GIVEN WASEEM BANU;

KADHIRY SALAI ABDUL KHALIQU; HALIMA SANOFER SEYED MOGDOOM; ANIRUDHA BOKIL; KAVITA KAMTIKAR; HARSHITKUMAR PARMAR; SEFALI JADAV; SRINU BABU JANYAVULA; BHARGAVI YERRAPOTHU; PRASAD MOHAPATRA SAKTI; DEBAHRUTI MISHRA; LAKSHMIKANTHAN KASI; REVATHI BAALA JANAKIRAMAN; KIRTHINIDHI BANDAKGANGADHAR; SHAILAJA PATIL; ARATI KELEKAR; ANUPAM SULE; RAGESH RAMCHANDRAN NAIR; NIVEDITA NAIR; MAYANKKUMAR PATEL; AMRUTA PATEL; SREEHARSHA PANGULURI; LAVANYA INAMPUDI; CHINTAN MAHESHKUMAR VAKHARIA; KHUSHALI VAKHARIA; SASANKA ANNAPUREDDY; HARIKA BODDU; PADMA KATAPALLI; MADHUSUDHAN PANTULA; KALYAN ALUGUBELLY; NAGA HARISHA KARANAM; PRIYANKA ANAND; ARUN SHARMA; KRISHNA RAO MOKIRALA; SWATHI MURAHARI; PAYAL MUTHA;

YASHRAJ KURANI; VIKRANTH
CHALASANI; MANASA AMBATI;
SWETALKUMAR BRAHMBHATT;
MEHA DESAI; KARTHIK
RAJASHEKARAN; MAYANK
SRIVASTAVA; PRATIKSHA
MADANSWAROOP SAXENA;
AMITKUMAR UMEDKUMAR
TANNA; KHYATI TARUNKUMAR
SHAH; VENKATA RAMANA
DHUGGISHETTY; SHIRISHA
RAMAKUMAR VALAKONDA;
ALVIN GEORGE; JOISE JOY
KALLARAKKAL; VIKRANTH
CHALASANI; MANASA AMBATI;
SURYA KAMAL KIRAN
KUCHIBHOTLA; PRATHYUSHA
DWIVEDULA; PRASHANT
DHODLA; SRAVANI KOMMURI;
KRISHNA CHAITANYA
MEDASANI; SWAPNA
PATCHAVA; ANURAG
AMBEKAR; ANUJA DESHPANDE;
ARNAB SOM; ARUPA SOM;
NIKHIL UPADHYAY; ARCHITA
UPADHYAY; VENKATA SRI SAI
ARCHANA STHANAM; ROHIT
BHOSEKAR; KAUSHIK
VENKATESAN SUNDARESA;
MAHALAXMI KRISHNAMURTHY;
ANANDA ROY; TAMASI ROY;
KAUSHIK VENKATESAN
SUNDARESA; MAHALAXMI

KRISHNAMURTHY; NARAYAN RAJARAM; ARTHI UTHAMARAJAN; VEERA MADDIMSETTI; RADHA GOWRI MADDIMSETTI; SRIKANTH GADEELA; PRIYADARSHINI GADEELA; RAMYA UTHAMARAJAN; RANJANI PAI; DEEPAK CHAMAN CHHABRA; PALAK ARORA; GAYATHRI DEVI ATHREYAPURAPU; KIRAN KUMAR REDDY ENDREDDY; DURGA VARA PRASADA RAO NARINDI TULASI VENKATA; SWATHI MALEY; PRANEETH KUMAR CHALLA; VIDYA AERY; HARISH CHANDA; VENKATA BODLA; RANGANATH LINGUNTLA; SANDYARANI GALI; PRAVEEN KUMAR MANTHRI; SWETHA MERUGU; SAILATHA CHANDRASEKAR; RASHPAL SINGH GILL; JASPREET KAUR GILL; SAIRAM THENNETTI SUBBARAMAN; ESWARA RAO CHANGHALASETTY; PRANEETHA LELLA; SUBRAHMANYAM ADDALA; SIRISHA TANNERU; NAVEEN VEMULA; SINDHURA BOJJA; TEJVARUN GARLAPATI; MADHUSWETHA PESALA; GAUTAM PARAB; MANISHA

PARAB; SAHITHI VIDUKULLA;
SAKETH GAGGENAPALLI;
SHRAMIKA REDDY BOJJA;
KISHORE BRAMHAMDAM
PHANINDRA SIVA; CHETANA
MADIRAJU; KISHORE
BRAMHAMDAM PHANINDRA
SIVA; CHETANA MADIRAJU;
KISHORE KUMAR RAJU ALLURI;
NAGA MONIKA PENMETSA;
VENKATA SATISH POTINENI;
DHARITRI BOLLINI; ASHISH
CHITALIA; SHRUTI CHITALIA;
CHAITHANYA VANAMA;
KEERTHI TADAKAMALLA;
ASHOK KANDIKANTI; POOJA
SABGANI; VIJAY K
THUMMAIPALLI; NAGA
VENKATA LAKSHMI PAVANI
BURELA; RANJANA REGUNATHA
SARMA; SHRIRAM KRISHNAN;
PRAMOD LUMBURU; SARNAYA
GUNASEKARAN; BHAVANA
VARALA; KARAN VINAY K.
PASPULETE; WILSON VICTOR
GOMES; MARIYA LAVEENA
RODRIGUES; ANKUSH BHATIA;
FNU KIRAN JOT KAUR; AJIT
RAJAGOPAL VENKATESAN;
ARTHI NAGARAJAN; KISHORE
KURAPATI; KAVITHA KOTA;
BHASKAR APPARAJU VENKATA;
PADMAJA GANUGAPATY;

KRANTHI KOTTHA; AARTI RANGWAR; ANIL KAKUMANU; ALEKHYA KURMALA; MUKUND RAJENDRAN; SOWMIYA VENKATARAMAKRISHNAN; HANEESH KUMAR PEPALA; KRANTHI NALLAMOTHU; ROHIT KUMAR AMBALA; KARTHICK KUMAR KAVINDAPADI NAGARAJAN; VISHAY VANJANI; TANVI GALOHDA; BHARGAVA KALATHURU; SWAPNA REDDY BAITAPALLI; MANSI PEDGAONKAR; HRISHIKESH TENDULKAR; UDAY MARIPALLI; SHALINI RAVI; YASHWANTH SHEELAVATHI KAMALANATH; NO NAME GIVEN MELKOTE SUNDAR RAJAN NAGABRINDA; SNEHA NAGENDRA; ASHISH AMARNATH; GAURAV RAJASEKAR; VIDYA SADANANDAN; BHUPENDER PANWAR; SEEMA MALIK; SATEESH NAGULAPALLY; KEERTHANA BACHARAJU; VASANTH KUMAR NAGARAJAN; PRIYADARSHINI RAVIKUMAR; SHANTHAN REDDY PASHAM; KIRANMAYEE KANDADI; GAURAV ANAND (NO LAST NAME); SHELLY JUNEJA; CHANDANA TUMMALA;

SRIKANTH MAKINENI; RAJESH
SAGIRE; RADHIKA AKULA;
MAYUR PATEL; ANKITA PATEL;
ANAND VENKATESWARAN;
VIDHYA ANAND; MAHESH
CHUDAMANI; DEEPIKA DIXIT;
PAYAL SHANTILAL MUTHA;
YASHRAJ KURANI; PARIKSHIT
SHARMA; MISHA SHARMA,

*Plaintiffs-Appellants*,

v.

UR M. JADDOU, Director, United
States Citizenship and Immigration
Services; ANTONY J. BLINKEN,
Secretary, United States Department
of State,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Western District of Washington
John H. Chun, District Judge, Presiding

Argued and Submitted March 29, 2023
Seattle, Washington

Filed December 1, 2023

Before: Jacqueline H. Nguyen and Andrew D. Hurwitz,

Circuit Judges, and Philip S. Gutierrez,[*] Chief District Judge.

Opinion by Judge Nguyen

## SUMMARY[**]

### Immigration/Preliminary Injunctions

In consolidated appeals, the panel affirmed the district courts' denials of injunctive relief in cases in which plaintiffs sued to compel U.S. Citizenship and Immigration Services to act on their applications for adjustment of status.

Plaintiffs are natives of India who have lawfully worked in the United States for years. Their employers sponsored them for immigrant visas, and plaintiffs have been waiting in a visa queue for more than 10 years. After the State Department estimated that it had reached plaintiffs' places in line, plaintiffs applied for adjustment of status to become lawful permanent residents, but the State Department then revised its forecast and concluded that it had hit the visa cap for the year. Before the district courts, plaintiffs moved to enjoin the government from considering the availability of visas when evaluating their applications.

---

[*] The Honorable Philip S. Gutierrez, Chief United States District Judge for the Central District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel concluded that the district court properly denied injunctive relief, determining that plaintiffs are unlikely to succeed on the merits of their claims. Plaintiffs contended that 8 C.F.R. § 245.2(a)(5)(ii) violates Congressional intent by requiring an immigrant visa to be available before the government can adjudicate an adjustment application. Looking to the statute governing adjustment of status, 8 U.S.C. § 1255(a), the panel explained that nothing in its text conflicts with the regulation, and the Immigration and Nationality Act is otherwise silent on the issue. The panel also rejected plaintiffs' arguments that other statutory provisions, as well as legislative and regulatory history, supported their positions. Further, the panel explained that the regulation is consistent 8 U.S.C. § 1255 and reasonably fills in a procedural detail left open by Congress.

---

**COUNSEL**

Brad Banias (argued), Banias Law LLC, Charleston, South Carolina, for Plaintiffs-Appellants.

Alessandra Faso (argued) and Joseph G. Nose, Trial Attorneys; Glenn M. Girdharry, Deputy Director; William C. Peachey, Director; Brian M. Boynton, Principal Deputy Assistant Attorney General; United States Department of Justice, Civil Division, Office of Immigration Litigation, District Court Section, Washington, D.C.; Elizabeth D. Kurlan, Trial Attorney, United States Department of Justice, United States Attorney's Office, San Francisco, California; for Defendants-Appellees.

**OPINION**

NGUYEN, Circuit Judge:

Plaintiffs, natives of India, have lawfully worked in the United States for years. Their employers sponsored them for an immigrant visa—the first step to obtaining a "green card" entitling them to lawful permanent resident status. But due to the long and arduous process, plaintiffs have been waiting in an immigrant visa queue for more than 10 years.

The root of the problem is mismatched supply and demand. The Immigration and Nationality Act ("INA") caps the number of immigrant visas available each year. The cap has not changed since 1995 even though demand for a green card has substantially increased and consistently exceeds supply. Consequently, there is a long and growing line of green card seekers.

After the State Department estimated it had reached their places in line, plaintiffs applied to U.S. Citizenship and Immigration Services ("USCIS") for a green card. As lawful permanent residents, plaintiffs would no longer face restrictions on work or international travel, among other benefits. But before USCIS processed plaintiffs' applications, the State Department revised its forecast and concluded that it had already hit the immigration cap for the year. That means, as USCIS and the State Department (collectively, "the government") interpret the INA, plaintiffs will have to wait indefinitely to adjust their status until more immigrant visas become available in a future fiscal year.

Plaintiffs challenge the government's interpretation of the INA. Before the State Department announced it had hit the immigration cap, plaintiffs sued to compel USCIS to act

on their applications for adjustment of status. The district courts denied injunctive relief.

We affirm. The government's procedure, while understandably frustrating, comports with longstanding policy. Although the State Department initially estimated that it had immigrant visas available to plaintiffs, an estimate is not a guarantee. The State Department can and must revise its estimate when the circumstances change. Therefore, plaintiffs are unlikely to establish that their claims are meritorious. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (requiring a plaintiff to establish, among other factors, a likelihood of success on the merits to obtain injunctive relief).

## I.  BACKGROUND

### A.  Adjusting status to lawful permanent resident

A noncitizen who is lawfully present in the United States and seeks lawful permanent residence generally must (1) apply for adjustment of status; (2) be eligible for an immigrant visa and admission to the United States for permanent residence; and—at issue here—(3) have an immigrant visa "immediately available to him at the time his application is filed."  8 U.S.C. § 1255(a); *see also id.* § 1181(a), (c) (requiring immigrants other than refugees to obtain a visa).  The Attorney General "may" adjust the status of a noncitizen who satisfies these statutory requirements "in his discretion and under such regulations as he may prescribe." *Id.* § 1255(a).

Under one such regulation, an employment-based application for adjustment of status "shall not be approved until an immigrant visa number has been allocated by the Department of State."  8 C.F.R. § 245.2(a)(5)(ii).  Once an

application is approved, the Attorney General must record the noncitizen's lawful admission for permanent residence "as of the [approval] date," and the Secretary of State must "reduce by one the number of [employment-based] preference visas authorized to be issued." 8 U.S.C. § 1255(b).

Thus, an immigrant visa must be available both when an application for adjustment of status is filed per the statute, *id.* § 1255(a), *and* when the application is approved per the regulation, 8 C.F.R. § 245.2(a)(5)(ii). Availability, however, is a moving target. An immigrant visa that is available when the noncitizen applies to adjust status can become unavailable by the time the application is processed and ready to be approved due to the chicken-and-egg nature of the determination. Applying for adjustment of status requires visa availability, but visa availability turns on the number of applications for each category of visa.

## B. Numerical limitations on employment-based immigrant visas

Obtaining an immigrant visa usually requires sponsorship by a U.S. citizen relative or employer, and often a years-long wait.[1] *See* 8 U.S.C. §§ 1151(a)(1)–(2), 1153(a)–(b). For employment-based visas, a sponsoring employer generally files an immigrant petition on the noncitizen's behalf. *See* 8 C.F.R. § 204.5(a). An approved immigrant petition is required for a green card. *See id.* § 245.2(a)(2)(i)(B). But neither sponsorship nor an approved immigrant petition guarantees an available visa;

---

[1] Another route to an immigrant visa is luck. A lottery promoting diversity allocates a limited number of visas each year regardless of sponsorship. *See* 8 U.S.C. §§ 1151(a)(3), 1153(c); 22 C.F.R. § 42.33(c).

the INA limits the annual number of immigrant visas except for immediate family members and a few other special groups not implicated in this appeal.  *See* 8 U.S.C. § 1151.

The authorized number of employment-based immigrant visas varies from year to year and from person to person, depending on several dynamic, interrelated factors.  As a starting point, the State Department—the agency tasked with calculating visa availability, *see id.* § 1255(b)—can authorize 140,000 employment-based visas during each fiscal year.  *See id.* § 1151(d)(1)(A).  In addition, any family-sponsorship visas that were authorized but unallocated during the previous year can be reauthorized as employment-based visas.  *See id.* § 1151(d)(1)(B), (2)(C).

Two other statutory provisions limit the number of employment-based immigrant visas available to individual applicants.    First, the INA imposes country-based immigration caps—no more than seven percent of the combined family- and employment-based visa authorizations may be allocated to natives of any single state.[2]    *See id.* § 1152(a)(2).    Second, certain types of immigrant visas are also capped.  Employment-based visas fall into one of five "preference" categories, defined by characteristics of the immigrant's skills or job, and each

---

[2] More precisely, the seven-percent cap applies to applicants who are "chargeable" to a particular country.  *See* 8 U.S.C. § 1152(b); *see also id.* § 1255(b) (providing that approved green card applications "reduce . . . the number of preference visas authorized to be issued under [8 U.S.C. §§ 1152 and 1153] within the class to which the alien is chargeable").  Noncitizens are typically chargeable to their country of birth, but there are exceptions to promote family unity.  *See* 8 U.S.C. § 1152(b)–(c); 22 C.F.R. § 42.12.  Throughout this opinion, we use "native of" and "chargeable to" interchangeably because the differences are immaterial to the issue before us.

preference category has its own percentage limits. *See id.* § 1153(b). For example, visa allocations in each of the two preference categories at issue here—individuals with advanced professional degrees or exceptional ability ("EB-2") and skilled workers, professionals, and other workers ("EB-3")—ordinarily cannot exceed 28.6% of all employment-based visas worldwide. *See id.* § 1153(b)(2)–(3).

To avoid available visas going unused, two key provisions apply when an employment preference category is undersubscribed. One lifts the seven-percent country cap in any calendar quarter where "the total number of visas available" in a particular preference category "exceeds the number of qualified immigrants who may otherwise be issued such visas."[3] *Id.* § 1152(a)(5). The other lifts the percentage caps on certain preference categories by making available unused visas in other categories—thus allowing visas to "fall down" from one category to another. *See id.* § 1153(b)(1), (2).

These provisions greatly benefit immigrants from India. The exception to country caps in § 1152(a)(5) has been applied every year since 1990, when the current statutory scheme was established, and the "fall down" provisions in § 1153(b)(1) and (2) particularly help Indians seeking EB-2 visas. For example, in fiscal year 2021 (October 2020 through September 2021), Indian nationals used 47% of all EB-2 visas and 27% of all EB-3 visas.

---

[3] The State Department sets monthly and quarterly limits on the number of immigrant visas that may be issued. *See* 22 C.F.R. § 42.51(a).

## C. Employment-based immigrant visa queues

The State Department processes the immigrant visa queue "on a 'first-come, first-served' basis." *Tovar v. Sessions*, 882 F.3d 895, 897 (9th Cir. 2018) (quoting *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 48 (2014) (plurality opinion)). Petitions for an employment-based immigrant visa receive a "priority date" marking the applicant's place in the queue. Visas chargeable to any given country and preference category combination must be issued to eligible immigrants in the order of their priority dates. *See* 8 U.S.C. § 1153(e)(1); 22 C.F.R. § 42.51(b). For EB-2 and EB-3 visas, the priority date is usually the date that the Department of Labor accepts for filing the sponsoring employer's application for labor certification.[4] *See* 8 C.F.R. §§ 204.5(d), 245.1(g)(2); 22 C.F.R. § 42.53(a).

Based on the number of available visas and the priority dates of those in the queue, the State Department determines cutoff dates for each country in each preference category. These "final action" dates, which the State Department publishes in its monthly Visa Bulletin, represent the first priority date for which a visa is unavailable. *See* U.S. Dep't of State, Bureau of Consular Affs., Visa Bull., https://perma.cc/GN3P-VEXL. Put differently, the State Department projects that a visa will be immediately available to any immigrant with a priority date earlier than

---

[4] Before submitting an immigrant petition on the noncitizen's behalf, most sponsoring employers must first obtain certification from the Department of Labor that insufficient qualified U.S. workers are available for the position and the noncitizen's employment will not adversely affect wages and working conditions. *See* 8 U.S.C. § 1182(a)(5)(A)(i); 8 C.F.R. § 204.5(a)(2), (c); *see also* 8 U.S.C. § 1153(b)(3)(C). If labor certification is not required, the priority date is the date of the properly filed immigrant petition. *See* 8 C.F.R. § 204.5(d).

the published final action date. If the State Department anticipates being able to accommodate all visa petitions chargeable to a country and preference category, it lists the final action date as "current." More generally, "current" refers to a priority date earlier than the final action date—*i.e.*, a priority date for which an immigrant visa is immediately available.

Final action dates are only estimates, however, subject to revision as the State Department receives updated information. The INA permits the State Department to "make reasonable estimates of the anticipated numbers of visas to be issued during any quarter of any fiscal year" for the various employment-based preference categories and to "rely upon such estimates in authorizing the issuance of visas." 8 U.S.C. § 1153(g).

In the long run, final action dates tend to advance over time as the State Department accommodates the oldest priority dates. In the short run, the movement of final action dates can slow or even retrogress (*i.e.*, change to an earlier date) if the number of available visas is less than anticipated—such as when demand for immigrant visas in other preference categories and by applicants from other countries is greater than projected. Because visa petitions are processed in the order of their priority dates, retrogression does not affect an immigrant's place in the queue. USCIS and the State Department attempt to allocate all available employment-based immigrant visa numbers during each fiscal year.[5]

---

[5] For example, during fiscal years 2013 to 2019, USCIS and the State Department used more than 99% of available visas. In fiscal year 2021,

### D. Plaintiffs' applications for adjustment of status

Plaintiffs are longtime U.S. residents in nonimmigrant status who have applied for green cards. They have approved EB-2 immigrant petitions chargeable to India. Their priority dates, which range from 2012 to 2014, were current when plaintiffs applied for adjustment of status and remained current at the beginning of September 2022.

On September 6, 2022, however, the State Department announced that it had reached worldwide and country limits on EB-2 visas and would not authorize any additional visas during the final three weeks of the fiscal year. Then, in the October 2022 Visa Bulletin, the State Department announced the final action date for EB-2 visas chargeable to India had retrogressed from December 1, 2014, to April 1, 2012. Consequently, plaintiffs' priority dates are no longer current.

Plaintiffs sued in August and September 2022, alleging that the government is unlawfully withholding final action on their applications for adjustment of status in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).[6] Plaintiffs moved for a temporary restraining

---

when the number of available visas nearly doubled from a typical pre-pandemic year, they used 52% more visas but only 75% of those available.

[6] We reject USCIS's contention that the *Singh* plaintiffs did not make this argument in the district court and thus forfeited it on appeal. Although the *Singh* plaintiffs have referred to the government's adherence to 8 C.F.R. § 245.2(a)(5)(ii) variously as an "Adjudication Hold Policy" and a "Regression Policy," their argument has remained the same—that the regulation is invalid. While plaintiffs could frame their challenge in myriad ways—including attacking the regulation directly as arbitrary and capricious, *see* 5 U.S.C. § 706(2), their challenge's likelihood of success does not rise or fall with its framing.

order ("TRO") enjoining the government from considering the availability of immigrant visas when evaluating their applications. In each case, the district court denied the motion. *See Babaria v. Blinken*, No. 22-cv-05521, 2022 WL 10719061 (N.D. Cal. Oct. 18, 2022); *Singh v. Jaddou*, No. 22-cv-01180, 2022 WL 4094373 (W.D. Wash. Sept. 2, 2022); *Datta v. Jaddou*, No. 22-cv-1302, 2022 WL 4547018 (W.D. Wash. Sept. 29, 2022). We consolidated the three appeals.

## II. JURISDICTION

In *Babaria*, the district court converted the TRO motion into a motion for a preliminary injunction, which the court denied. We have appellate jurisdiction to review that order. *See* 28 U.S.C. § 1292(a)(1) (authorizing appeals from "[i]nterlocutory orders . . . refusing . . . injunctions"); *Monarch Content Mgmt. LLC v. Ariz. Dep't of Gaming*, 971 F.3d 1021, 1026–27 (9th Cir. 2020).

The government challenges our jurisdiction to consider the appeals from the denial of TROs in *Singh* and *Datta*. Although orders ruling on TRO motions "are typically not appealable," *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 659–60 (9th Cir. 2021), that is largely for prudential rather than jurisdictional reasons, *see Religious Tech. Ctr. v. Scott*, 869 F.2d 1306, 1308 (9th Cir. 1989) (discussing the general disallowance of TRO appeals due to "the interests of avoiding uneconomical piecemeal appellate review" (quoting *Kimball v. Commandant Twelfth Naval Dist.*, 423 F.2d 88, 89 (9th Cir. 1970))).

For one thing, TROs provide only temporary relief.[7]  *See* Fed. R. Civ. P. 65(b)(2) (limiting TROs to 14 days, extendable to 28 days with good cause and longer only if the adverse party consents).  Because of their limited duration, TROs do not count as "injunctions" under § 1292(a)(1).  *See Gon v. First State Ins.*, 871 F.2d 863, 865 (9th Cir. 1989) (defining "injunction" in relevant part to mean "an order that is . . . designed to accord or protect some or all of the substantive relief sought by a complaint in more than temporary fashion" (footnote omitted)).

Another concern about reviewing TROs is that they can issue without the adverse party receiving notice or an opportunity to respond, *see* Fed. R. Civ. P. 65(b)(1); *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 762 (9th Cir. 2018), leaving us with an incomplete record, *see Haitian Refugee Ctr., Inc. v. Baker*, 950 F.2d 685, 686 (11th Cir. 1991) (per curiam) (explaining that the adverse party's lack of notice "allow[s] the trial judge to hear only one side of the case").

Neither of those concerns is present here.  Plaintiffs sought relief that exceeded the scope of a TRO.  As USCIS acknowledged, the *Singh* plaintiffs' TRO motion sought "total relief on the merits of their claims."  The *Datta* plaintiffs moved to enjoin the government from enforcing 8 C.F.R. § 245.2(a)(5)(ii) beginning on October 1, 2022—then more than two weeks away.  Although the plaintiffs did not

---

[7] The limited duration of a TRO can also render an appeal moot—a jurisdictional concern—when the order expires or is supplanted by a preliminary injunction.  *See Serv. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*, 598 F.3d 1061, 1068–69 (9th Cir. 2010).  For reasons discussed below, the *Singh* and *Datta* plaintiffs' claims are not moot.

specify how long the injunction should last, their complaint sought to compel USCIS to issue final decisions on their applications for adjustment of status within six months, and their TRO motion reiterated the need "to get timely decisions." In both cases, the government had notice of the TRO motions and submitted oppositions with additional evidence.

"[A] denial of a TRO may be appealed if the circumstances render the denial 'tantamount to the denial of a preliminary injunction.'" *Religious Tech. Ctr.*, 869 F.2d at 1308 (quoting *Env't Def. Fund, Inc. v. Andrus*, 625 F.2d 861, 862 (9th Cir. 1980)). Such is the case here. The requested injunctions would have lasted "well beyond the fourteen-day limit imposed by Federal Rule of Civil Procedure 65(b)," *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d at 660, and "the denial of the TRO effectively decided the merits of the case" and rendered plaintiffs' claims moot, *Graham v. Teledyne-Cont'l Motors*, 805 F.2d 1386, 1388 (9th Cir. 1986). Therefore, we have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) in all three appeals.

### III. STANDARD OF REVIEW

We review the district court's denial of preliminary injunctive relief for abuse of discretion, *see Mobilize the Message, LLC v. Bonta*, 50 F.4th 928, 934 (9th Cir. 2022), but review questions of statutory interpretation de novo, *see Washington v. U.S. Dep't of State*, 996 F.3d 552, 560 (9th Cir. 2021).

### IV. DISCUSSION

"To obtain a preliminary injunction, a plaintiff must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary

relief, (3) that the balance of equities favors the plaintiff, and (4) that an injunction is in the public interest." *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 753 (9th Cir. 2022) (en banc) (citing *Winter*, 555 U.S. at 20). "[T]he legal standards applicable to TROs and preliminary injunctions are 'substantially identical.'" *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (per curiam) (quoting *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)).

## A.  Likelihood of success on the merits

Plaintiffs contend that 8 C.F.R. § 245.2(a)(5)(ii) "violate[s] clear Congressional intent" by requiring an immigrant visa to be available before the government can adjudicate an application for adjustment of status.  For the reasons below, we disagree.

### 1.  Statutory text

Congress set forth the requirements for a green card in 8 U.S.C. § 1255(a).  That statute provides in relevant part that a noncitizen's "status . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe . . . [,] if . . . an immigrant visa is immediately available to [the noncitizen] at the time his application is filed." *Id.*

While plaintiffs are correct that § 1255(a)'s "plain text . . . does not require an immigrant visa to be immediately available at the time of adjudication," neither does the text foreclose such a requirement.  In fact, by providing that the Attorney General "may" adjust an applicant's status "in his discretion" and "under such regulations as he may prescribe," *id.*, the statute vests the government with considerable leeway in establishing the

process, *see Ruiz-Diaz v. United States*, 618 F.3d 1055, 1061 (9th Cir. 2010) ("Congress expressly manifested its intent that the [government] regulate the process by which status will be adjusted except for [§ 1255(a)'s] three . . . prerequisites . . . .").

Plaintiffs rely on our statement in *Hernandez v. Ashcroft* that "there is no indication that possession of an allocated visa number is an eligibility requirement for adjusting status," 345 F.3d 824, 844 (9th Cir. 2003), but *eligibility* to adjust status is not the issue here. The issue, rather, is the *timing*—whether the government can make plaintiffs wait for an allocated visa number before finally adjudicating their applications.

Recognizing this distinction, *Hernandez* harmonized the eligibility requirement of an immediately available visa at the time of filing with 8 C.F.R. § 245.2(a)(5)(ii)'s requirement of an allocated immigrant visa number at the time of approval. 345 F.3d at 844 n.21. The latter is "a *mechanical requirement* necessary to actually adjust status, one that does not defeat eligibility but which may affect processing of an approved petition." *Id.*

If anything, *Hernandez* undermines plaintiffs' argument. We recognized that "*adjustment cannot actually be granted unless a [visa] number is also available at the time of adjustment.* Should the numbers meanwhile fall behind and become unavailable for the applicant's priority date, adjustment is postponed until the number does become available." *Id.* (cleaned up) (quoting Charles Gordon et al., *Immigration Law & Procedure* § 51.02(2)(b)(iii) (2003)). Thus, nothing in the statutory text conflicts with 8 C.F.R. § 245.2(a)(5)(ii), and the INA is otherwise silent on the need for an available immigrant visa to approve status adjustment.

## 2.  Statutory structure

Plaintiffs cite several other statutory provisions, but none supports their interpretation of 8 U.S.C. § 1255(a).  Plaintiffs first assert that § 1255(b) "assumes that, if there is an application for adjustment of status filed, there will be a visa number available for that applicant."  To the contrary, § 1255(b) assumes only that a visa number will be available at the time an application is *approved*:

> Upon the approval of an application for adjustment made under subsection (a), the Attorney General shall record the alien's lawful admission for permanent residence as of the [approval] date . . . , and the Secretary of State shall reduce by one the number of the preference visas authorized to be issued under [8 U.S.C. §§ 1152 and 1153] within the class to which the alien is chargeable for the fiscal year then current.

The statute is agnostic as to why a visa must be available when adjustment of status is approved—whether because the visa number must be allocated at the time of the application or because the application cannot be approved until a visa number is available.  By expressing no preference and authorizing the Attorney General to issue "such regulations as he may prescribe," *id.* § 1255(a), Congress plainly left the decision in the government's hands.  *See, e.g.*, *Morton v. Ruiz*, 415 U.S. 199, 231 (1974) ("The power of an administrative agency to administer a congressionally created and funded program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.").

Similarly, the government can adhere to 8 U.S.C. § 1153(e)'s requirement of issuing visas in the order of priority dates whether it allocates available visa numbers when the application is filed or approved. Plaintiffs posit that "a fluctuation in the visa bulletin" could make a visa available to the principal applicant but not her derivative family members, contrary to § 1153(d)'s provision that the family members are "entitled to . . . the same order of consideration," but they offer no explanation how such a circumstance could arise. The final action dates published in the Visa Bulletin are specific days, and § 1153(d) ensures that derivative family members have the same priority date as the principal applicant. Retrogression thus affects both principal and derivative applicants alike.

Plaintiffs also argue that the Child Status Protection Act ("CSPA"), 8 U.S.C. § 1153(h)(1), "assumes immigrant visas need only be available at the time of filing." Once again, this is a non sequitur. The CSPA "provide[s] age-out protection" for noncitizens who were less than 21 years old when an immigrant petition was filed on their behalf. *Ochoa-Amaya v. Gonzales*, 479 F.3d 989, 992 (9th Cir. 2007). It "ensures that the time Government officials have spent processing immigration papers will not count against the [child] in assessing his status." *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 45 (2014) (plurality opinion). It has nothing to do with the time at which visa numbers are allocated.

### 3. Legislative and regulatory history

Lastly, plaintiffs argue that legislative and regulatory history support their argument. They are mistaken.

From 1952 to 1960, the INA required an immediately available immigrant visa both "at the time of [the]

application for adjustment" and "at the time [the] application is approved." INA, ch. 477, § 245, 66 Stat. 163, 217 (1952). From 1960 to 1976, the INA required an immediately available visa only "at the time [the] application is approved." Act of July 14, 1960, Pub. L. No. 86-648, § 10, 74 Stat. 504, 505. And since 1976, the INA has required an immediately available visa only "at the time [the] application is filed." INA Amendments of 1976, Pub. L. No. 94-571, § 6, 90 Stat. 2703, 2705–06.

Plaintiffs argue that this history "reveals Congress knowingly rejected the requirement to have a current visa number at approval." We have rejected a similar argument in another context. The 1960 amendment to § 1255(a), in addition to changing the point in the process at which a visa must be immediately available, removed language requiring that the person seeking to adjust status be a "bona fide" nonimmigrant. *See Garcia Castillo v. INS*, 350 F.2d 1, 3 (9th Cir. 1965). Yet the government continued to rely on a nonimmigrant's lack of "bona fides"—*i.e.*, his having obtained a nonimmigrant visa with the intent of residing in the United States permanently—as a basis for denying his application to adjust status. *See id.* at 2–3.

One unsuccessful applicant argued that "Congress, by elimination of entry as a bona fide nonimmigrant as a statutory requirement . . . , also made entry as a bona fide nonimmigrant without significance in the [government's] exercise of discretion under [§ 1255(a)]." *Id.* at 3. We disagreed, explaining that the 1960 amendment "involved a change in the statutory [eligibility] requirements" but "did not directly or otherwise limit the scope of the Attorney General's discretion." *Id.* We explained that Congress's purpose in removing the language was merely to ensure that violating the "bona fide nonimmigrant" standard would not

automatically bar an applicant from adjusting status. *Id.* at 3–4.

Congress likely intended a similar effect here for reasons having nothing to do with visa quotas. Until the statute took its present form in 1976, it required that an immigrant visa be "immediately available to [the applicant for adjustment of status] at the time his application is approved." 66 Stat. at 217; 74 Stat. at 505. This meant not only that the numerical limitations for the applicant's country and visa type had not been exceeded that year, *see* 8 C.F.R. § 245.1(g), but also that the applicant had an approved family- or employment-sponsored visa petition, *see INS v. Miranda*, 459 U.S. 14, 15 (1982) (per curiam).

If circumstances changed while the application was pending—for example, if the applicant's marriage or job ended, and the immigrant visa petition was consequently denied or revoked—the statute foreclosed adjustment of status. *See Miranda*, 459 U.S. at 15–16. Long agency processing times increased the likelihood of such an outcome. *See id.* at 18 (observing the difficulty of "process[ing] an application as promptly as may be desirable"); *cf. Kalezic v. INS*, 647 F.2d 920, 922 (9th Cir. 1981) ("[B]ecause of the tortoise-like pace of immigration proceedings, the alien who seeks [marriage-based] relief [from deportation] may commence proceedings with a valid claim and see it disintegrate some years later as his case creeps through INS channels."). By changing the statute, Congress enabled the executive branch to ameliorate some of the harsh consequences to applicants whose circumstances changed while they awaited status adjustment. *See Tien v. INS*, 638 F.2d 1324, 1329 n.13 (5th Cir. Unit A Mar. 1981) (suggesting that the statutory change

"indicat[es] Congress' awareness of the delays involved prior to agency action on an application").

Another reason to doubt that the statutory change made the regulation anachronistic is the absence of Congressional action to address the regulation.  At the time of the 1976 statutory change, the precursor to 8 C.F.R. § 245.2(a)(5)(ii) had been in place for more than a decade. *See* Miscellaneous Amendments, 30 Fed. Reg. 14772, 14778 (Nov. 30, 1965) (formerly codified at 8 C.F.R. § 245.1(g)) ("The application shall not be approved until an immigrant visa number has been allocated by the Department of State.").  And in the nearly 50 years since the statutory change, Congress has left the substance of the regulation in place despite amending 8 U.S.C. § 1255 on numerous other occasions.  Congress's longstanding silence about the regulation implies tacit legislative approval.  *See Haig v. Agee*, 453 U.S. 280, 300–01 (1981).

### 4. Reasonableness

As we have explained, 8 C.F.R. § 245.2(a)(5)(ii) is consistent with 8 U.S.C. § 1255 and reasonably fills in a procedural detail left open by Congress.  The rule championed by plaintiffs, on the other hand, makes little sense.  Plaintiffs acknowledge that under § 1255(b), the State Department "is required to allocate a visa number from whatever fiscal year is 'then current' at the time of approval, not the fiscal year when the application was filed."  But given long processing times, not all applications will be filed and approved in the same fiscal year.  Under plaintiffs' view, the visa numbers allocated at the time of filing would go at

least temporarily unused in such cases.[8] So too with applications that are ultimately withdrawn or denied. Plaintiffs' proposed rule would result in inefficiency and further delay.

Even if, for the sake of argument, plaintiffs offered the superior policy choice, they are not trying to change the government's policy. Plaintiffs do not seek to represent the entire class of individuals pursuing employment-based visas chargeable to India. Instead, plaintiffs' requested relief would have them leapfrog ahead of others in the queue, contravening 8 U.S.C. § 1153(e)(1)'s requirement of allocating visas in the order of priority dates.

For all these reasons, plaintiffs are unlikely to succeed in challenging 8 C.F.R. § 245.2(a)(5)(ii).

## B. Other factors for injunctive relief

We need not consider the remaining *Winter* factors because plaintiffs fail to show a likelihood of success on the merits. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) ("Likelihood of success on the merits 'is the most important' *Winter* factor; if a movant fails to meet this 'threshold inquiry,' the court need not consider the other factors in the absence of 'serious questions going

---

[8] Unused employment-based visa numbers in any given fiscal year would not truly be "wasted," as the government asserts, because they would be reallocated the following year to family-sponsored visas. *See* 8 U.S.C. § 1151(c)(1)(A), (3)(C). And to the extent the visa numbers are not used as family-sponsored visas, they would be reallocated back to employment-based visas in the second year. *See id.* § 1151(d)(1)(B), (2)(C). But if they are used as family-sponsored visas, then the visa numbers are "wasted" from the perspective of someone waiting for an employment-based visa. Whatever the case, the visa queue would lengthen as the time visa numbers go unused increases.

to the merits.'" (citations omitted) (first quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc); then quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011))); *see also All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 497 (9th Cir. 2023) (explaining that "serious questions" do not exist where injunctive relief depends on "an incorrect interpretation of a statute").

*    *    *

Despite lawful employment in the United States for more than a decade, plaintiffs still have no clear indication of when their application for a green card will be approved. The long immigrant visa queue imposes significant hardship, and plaintiffs are understandably frustrated. But in this instance, relief must come from action by the executive and legislative branches rather than the judiciary. The district courts properly denied injunctive relief.

**AFFIRMED.**